## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO: 20-CV-24462-CIV-KMW

ALEJANDRO MUGABURU,

      Plaintiff,

v.

AKIMA GLOBAL SERVICES, LLC;
OFFICER DOMINGUEZ (AGS),
OFFICER HERNANDEZ,
OFFICER BETANCOURT,
OFFICER ELIAN,
OFFICER PAEZ,
SUPERVISOR SMITH,
DR. ERNESTO YGLESIAS,
DAYLEN FARINAS,
OFFICER BROWN,
OFFICER DOMINGUEZ (ICE), and
the UNITED STATES OF AMERICA,

      Defendants.

_____/

### DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
### PLAINTIFF'S AMENDED COMPLAINT

                         **JUAN ANTONIO GONZALEZ**
                         **ACTING UNITED STATES ATTORNEY**

By:    *Frank A. DeLuccia   /s/*
             FRANK A. DELUCCIA
             ASSISTANT U.S. ATTORNEY
             Federal Bar No. A5502695
             500 E. Broward Blvd., Suite 700
             Fort Lauderdale, Florida 33394
             Telephone: (954) 660-5672
             E-mail: Frank.DeLuccia@usdoj.gov

             *Counsel for Defendant United States of America*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ i

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................................ 1

LEGAL STANDARD .................................................................................................................... 7

      I.      Rule 12(b)(1) ..................................................................................................... 7

      II.     Rule 12(b)(6) ..................................................................................................... 8

ARGUMENT .............................................................................................................................. 10

      I.      This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims ............... 10

      II.     Plaintiff's Complaint Fails to State a Claim Upon Which Relief Can Be Granted ............................................................................................................ 16

CONCLUSION ........................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Acts Ret.-Life Communities Inc. v. Est. of Zimmer*,
206 So. 3d 112, 114 (Fla. 4th DCA 2016) ...........................................................................20

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ............................................................................................9

*Arline v. School Bd. of Nassau Cty.*,
772 F.2d 759 (11th Cir. 1985) *aff'd and remanded sub nom. Sch. Bd. of
Nassau Cty., Fla. v. Arline*, 480 U.S. 273 (1987) .......................................................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................8, 9, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................................................8, 9

*Biggins v. United States*,
2005 WL 8155945 (S.D. Fla. 2005) ...................................................................................10

*Boles v. Riva*,
565 Fed. Appx. 845 (11th Cir. 2014) ...................................................................................9

*Bridgewater v. Potter*,
152011 WL 149318 (S.D. Fla. Jan. 18, 2011) ......................................................................8

*Broward Garden Tenants Ass'n v. E.P.A.*,
157 F.Supp.2d 1329 (S.D. Fla. 2001) ................................................................................10

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999)) .........................................................................................10

*Chiles v. Symon Says Enterprises, Inc.*,
2014 WL 201689, at *2 (M.D. Fla. Jan. 17, 2014) ..............................................................18

*Chronis v. United States*,
932 F.3d 544 (7th Cir. 2019) ......................................................................................11, 14

*Colonial Pipeline Co. v. Collins*,
921 F.2d 1237, 1243 (11th Cir. 1991)), *aff'd*, 824 Fed. Appx. 680 (11th Cir.
2020) ......................................................................................................................................7

*De La Campa v. Grifols Am., Inc.*,
819 So.2d 940, 943–44 (Fla. 3d DCA 2002)(per curiam) ...................................................18

iii

*DeRoy v. Carnival Corporation,*
  963 F.3d 1302 (11th Cir. 2020) ...................................................................7

*DeShiro v. Branch,*
  1996 WL 663974, at *4 (M.D. Fla. Nov. 4, 1996) ................................18

*Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.,*
  2020 WL 43221, at *2–3 (S.D. Fla. Jan. 3, 2020) ..................................7

*Halstead v. LBAM Inv. Grp., LLC,*
  2016 WL 9113446, at *2 (N.D. Fla. Nov. 7, 2016) ..............................18

*Horne v. Potter,*
  392 Fed. Appx. 800 (11th Cir. 2010) ......................................................9

*Joe v. United States,*
  772 F.2d 1535 (11th Cir. 1985) .............................................................16

*Johnson v. Thigpen,*
  788 So.2d 410, 413 (Fla. 1st DCA 2001) .............................................18

*Jude v. Comm'r of Soc. Sec.,*
  908 F.3d 152 (6th Cir. 2018) ..................................................................10

*Lay v. Roux Labs., Inc.,*
  379 So.2d 451, 452 (Fla. 1st DCA 1980) (per curiam).........................18

*Lopez v. Target Corp.,*
  676 F.3d 1230, 1236 (11th Cir. 2012) ..................................................18

*Makro Capital of America, Inc. v. UBS AG,*
  372 F.Supp.2d 623 (S.D. Fla. 2005) .....................................................10

*Malicki v. Doe,*
  814 So.2d 347, 362 (Fla. 2002)..............................................................20

*McElmurray v. Consol. Gov't of Augusta–Richmond Cty.,*
  501 F.3d 1244 (11th Cir. 2007) ...............................................................7

*McNeil v. United States,*
  508 U.S. 106 (1993)................................................................................12

*Morrison v. Amway Corp.,*
  323 F.3d 920, 925 (11th Cir. 2003) .........................................................8

*Motta ex rel. A.M. v. United States*,
    717 F.3d 840 (11th Cir. 2013) ...................................................................................16

*Nims v. Harrison*,
    768 So.2d 1198 (Fla. 1st DCA 2000) ........................................................................18

*OSI, Inc. v. United States*,
    285 F.3d 947 (11th Cir. 2002) .....................................................................................7

*Papasan v. Allain*,
    478 U.S. 265 (1986)................................................................................................9, 20

*Phillips v. United States*,
    260 F.3d 1316 (11th Cir. 2001) .................................................................................10

*Pollinger v. Internal Revenue Service Overnight Board*,
    362 Fed. Appx. 5 (11th Cir. 2010).............................................................................8

*Simpson v. Holder*,
    184 F. Appx. 904 (11th Cir. 2006)............................................................................11

*Suarez v. United States*,
    22 F.3d 1064 (11th Cir. 1994) .............................................................................11, 14

*Taylor v. Appleton*,
    30 F.3d 1365, 1367 (11th Cir. 1994) ...........................................................................7

*Tisdale v. United States*,
    62 F.3d 1367 (11th Cir. 1995) .............................................................................11, 17

*Tundidor v. Miami–Dade Cty.*,
    108 F. Supp. 3d 1312 (S.D. Fla. 2015), *aff'd* 831 F.3d 1328 (11th Cir. 2016).........7

*Turcios v. Delicias Hispanas Corp.*,
    275 Fed. Appx. 879, 880 (11th Cir. 2008)................................................................8

*United States v. Cotton*,
    535 U.S. 625 (2002)......................................................................................................7

*United States v. Mitchell*,
    445 U.S. 535 (1980)......................................................................................................8

*Universal Express, Inc. v. U.S. S.E.C.*,
    177 Fed. Appx. 52 (11th Cir. 2006)............................................................................9

*Williams v. Worldwide Flight SVCS., Inc.*,
    877 So.2d 869, 870 (Fla. 3d DCA 2004) ..............................................................18

**Statutes**

6 U.S.C. § 345 ...........................................................................................................5

28 U.S.C. § 1346 ..............................................................................................5, 10, 16

28 U.S.C. § 2401 ..................................................................................................11, 12

28 U.S.C. § 2402 .....................................................................................................16

28 U.S.C. § 2671 .....................................................................................................10

28 U.S.C. § 2672 .....................................................................................................11

28 U.S.C. § 2675 .............................................................................................. *passim*

28 U.S.C. § 2679 .....................................................................................................10

42 U.S.C. § 2000ee-1 ..............................................................................................5

**Regulations**

28 C.F.R. § 14.2 ................................................................................................11, 14

**Other  Authorities**

Fed. R. Civ P. 12(b)(1) .........................................................................................1, 7

Fed. R. Civ P. 12(b)(6) .........................................................................................1, 8

Section 504 of the Rehabilitation Act of 1973 ................................................5, 6, 14

**INTRODUCTION**

Defendant United States of America, by and through the undersigned Assistant United States Attorney, hereby moves to dismiss plaintiff Alejandro Mugaburu's ("Plaintiff") Amended Complaint ("DE 24") and all claims pled against the United States for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**FACTUAL BACKGROUND**

According to Plaintiff's Amended Complaint, on July 11, 2019, Plaintiff entered the custody of the U.S. Immigration and Customs Enforcement at Krome Detention Center ("Krome") in South Florida following a criminal conviction. DE 24, ¶¶ 19-22.  Prior to entering ICE custody, Plaintiff suffered an "attack" at Florida's Metro West Detention Center on March 29, 2019 that left him with a fractured arm, injuries to a shoulder and wrist, a blood clot in his head, and loss of hearing in an ear.  *Id.*, ¶ 20.  Plaintiff does not mention who attacked him or why.  *Id.*

Upon his entry into Krome, Plaintiff claims that he informed an unnamed registered nurse that he was epileptic and suffered from numerous other chronic medical ailments.  *Id.*, ¶ 22. Plaintiff took numerous medications for these conditions.  *Id.*  Upon his initial medical evaluation, Plaintiff claims that he was not given a "disability badge" by Dr. Ernesto Yglesias, who Plaintiff claims knew about his medical conditions.  DE 24, ¶ 19.  Plaintiff does not explain how Dr. Yglesias allegedly had such knowledge.  More notably, Plaintiff does not explain *why* he should have been given a "disability badge" at that time, leaving this Court to speculate accordingly.

Plaintiff infers in entirely conclusory fashion that a "disability badge" permits detainees to remain in first floor sleeping quarters with bottom bunk sleeping arrangements, whereas he was instead assigned a top bunk on the second floor.  *Id.*, ¶¶ 23-24.  Plaintiff then makes the entirely

1

speculative claim that he was assigned as such "despite the *potential* dangers of housing detainees with epilepsy on higher floors."  Plaintiff does not cite to any publication, authority, or other reference when making such a speculative claim and makes no mention of these "potential dangers" even are, leaving it to this Court to guess accordingly.  Plaintiff also fails to include any information regarding when a "disability badge" is provided and under what typical circumstances, making it further impossible to evaluate Plaintiff's allegations in the proper context.

Plaintiff claims that he was subjected to a period of three consecutive days without his epilepsy medication or other medications from September 11, 2019 to September 14, 2019.  *Id.*, ¶¶ 27, 29.  Plaintiff then vaguely claims that he was subjected to seventeen days without any of the mediations he takes for his conditions other than epilepsy, but does not specify the dates of these alleged seventeen days, whether they were consecutive or sporadic for all other medications he takes as opposed to only a few of them, etc.  *Id.*  Critically, Plaintiff does not allege that any of his medications were ever deliberately or maliciously withheld from him by anyone, including Dr. Yglesias or Nurse Daylen Farinas.  Regarding Nurse Farinas, Plaintiff claims only that she made rude comments abouts Plaintiff's unidentified "disability" and immigration status, though Plaintiff failed to provide any details about when these alleged comments were made, etc. DE 24, ¶ 28.

On September 14, 2019, Plaintiff "began to feel faint and feeble", "lost consciousness and tumbled down a flight of fourteen stairs."  *Id.*, ¶ 30.  Plaintiff describes the fall as a seizure induced by lack of mediation.  *Id.*, ¶ 31.  Plaintiff was unconscious for three hours afterwards and allegedly suffered multiple injuries, including an undefined injury to his left knee that he claims he still is "not able to bend or walk on."  *Id.*  This is the only physical injury Plaintiff identifies, albeit vaguely, that he suffered from his fall.  There is no explanation regarding how Plaintiff's alleged fall caused his alleged knee injury.

2

Plaintiff was taken to Kendall Regional Hospital on the day of his accident. *Id.*, ¶ 33. He was treated by medical personnel who recommended only "physical therapy, hot/cold treatment therapies, and muscle massages to treat the musculoskeletal pain resulting from the fall." DE 24, ¶ 33. Plaintiff's Amended Complaint is silent as to any specific injury he was *diagnosed* with by any medical professional due to his fall. Plaintiff claims that he was "not treated for his leg injuries at Kendall Regional Hospital" and never received the physical therapy recommended, though he does not claim that such therapy was withheld from him or by whom. *Id.*, ¶¶ 33-34. Plaintiff was discharged from the hospital the following day on September 15, 2019. *Id.*, ¶ 35. Curiously, Plaintiff suggests that the hospital discharged him in severe pain in his "legs" and without the ability to walk. *Id.* It must be noted that nowhere in Plaintiff's Amended Complaint does he state that any medical professional at Kendall Regional Hospital or elsewhere determined that Plaintiff required a wheelchair for his left knee injury or any other alleged injury to his "legs". Nowhere does Plaintiff claim that he was ever prescribed a wheelchair for any alleged injury to his "legs".

Upon his arrival at Krome's Medical Housing Unit ("MHU"), Plaintiff was provided with a disability badge because he "was not able to walk properly." *Id.*, ¶ 37. Plaintiff was housed in the MHU at Krome for several days, where Plaintiff claims that he was forced by unnamed medical staff to walk on his legs despite pain and inability to standard properly. DE 24, ¶ 38. He was given crutches, but instead, *requested* a wheelchair, which he was given. *Id.* Plaintiff again does not state that a medical professional ordered, prescribed, or recommended the wheelchair for him. When Plaintiff was discharged from MHU, he was placed in a segregation unit for two weeks, where he claims that he did not have access to a wheelchair accessible bathroom or other facilities. *Id.*, ¶¶ 39-40. Plaintiff claims that his "medication" was again delayed at times for periods of five consecutive days at a time, though he again does not state which "medication" this was, when this

alleged delay occurred, or that any specific individual delayed his medication intentionally or deliberately, including Dr. Yglesias and Nurse Farinas. *Id.*, ¶ 46.

The remainder of Plaintiff's allegations address transfers between detention centers in Florida beginning in February of 2020. One of these transfers in April of 2020 was allegedly completed by ICE officers, Officer Dominguez and Officer Brown. Plaintiff does not allege that any of his transfers were illegal or malicious. Instead, Plaintiff claims that the vehicles used to transport him were not wheelchair accessible. *Id.*, ¶¶ 48, 56, 59. At the various facilities, Plaintiff claims that he was denied access to wheelchair accessible facilities, including bathrooms, showers, beds, a shower chair, etc. DE 24, ¶¶ 49, 52, 53, 55, 60. On one occasion, Plaintiff claims that he was placed in second floor sleeping quarters, though he does not allege that first floor sleeping quarters were ever available. *Id.*, ¶ 49. His "medication" was delayed for up to three consecutive days at one of the facilities, though he again does not identify who delayed it or claim that this delay was deliberate or maliciously caused. *Id.*, ¶ 54. Plaintiff's transfers took place between February of 2020 and May of 2020 when he was released from Krome. *Id.*, ¶¶ 47, 58.

On January 31, 2020, Plaintiff claims that the American Bar Association ("ABA"), acting as his legal counsel, submitted a "complaint" to the Office for Civil Rights and Civil Liberties ("CRCL") of the U.S. Department of Homeland Security ("DHS"). *Id.*, ¶ 61. According to the typewritten "complaint" dated March 27, 2019 and associated email, Plaintiff mentions in the vaguest fashion that he was not supposed to be housed on the second floor because of his epilepsy, that he was not given "proper medicine and treatment" without further detail or explanation, that he fell down the stairs after having a seizure, and that he is in a wheelchair and in pain in various parts of his legs. DE 24-1. Plaintiff says nothing about anyone intentionally or deliberately withholding or denying him his epilepsy medication. Plaintiff says nothing about anyone speaking

to him poorly, nothing about anyone mistreating him, nothing about any transfers between any facilities, and nothing about Krome lacking wheelchair accessible facilities. *Id.* Instead, Plaintiff discussed how his immigration matter had been resolved and he was supposed to be released from detention in November, but he instead remained detained due to an alleged "medical hold". *Id.*

On February 12, 2020, CRCL responded to the ABA, stating that they had received their "complaint on behalf of [Plaintiff]". DE 24-2.  Significantly, the CRCL informed the ABA that the CRCL "reviews and assesses information concerning abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion, by employees and officials of DHS.  CRCL also reviews allegations that DHS employees, programs, or activities failed to accommodate an individual's disability under Section 504 of the Rehabilitation Act of 1973…" *Id.*

CRCL outlines its procedures for review and investigation and clearly informs the ABA, on Plaintiff's behalf, that "The purpose of CRCL's review is to assess if your complaint implicates issues that should be addressed by DHS management. The rights and remedies accorded to individuals under 6 U.S.C. § 345, 42 U.S.C. § 2000ee-1, and Section 504.  Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, our complaint process does not provide individuals with legal rights or remedies.  Accordingly, CRCL is not able to obtain any legal remedies or damages on your behalf. Instead, we use complaints like yours to find and address problems in DHS policy and its implementation.  Under Section 504, any rights or remedies you may have should be discussed with an attorney.  There may be time limitations that govern how quickly one needs to act to protect their interests.  In the events that you retain counsel in this matter, please provide CRCL with your attorney's name and contact information." *Id.*  Nowhere does CRCL ever inform the ABA that CRCL investigates alleged tortious conduct by DHS employees pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2675(a), etc.

On September 11, 2020, four months after his release from Krome, Plaintiff claims that DHS sent him a letter about "grievances" that Plaintiff "reported".  DE 24, ¶ 65.  To be clear, CRCL stated in its letter, which it emailed to Plaintiff, that "you alleged that you have epilepsy, and that in September 2019, you had a seizure and fell on the stairs, causing injury.  You further allege that you were improperly housed on the facility's second floor despite medical records that document your epilepsy."  DE 24-3. Plaintiff blatantly mischaracterizes the contents of the letter in his Amended Complaint to argue that CRCL "found a violation".  DE 24, ¶ 65.  The letter says no such thing.  Instead, the letter simply states that "DHS may resolve Section 504 complaints informally through a written agreement that describes the complaint and any agreed upon corrective action."  DE 24-3.  CRCL attempted to do so with Plaintiff with various forms of corrective action to be reviewed after six months.  *Id.,* DE 24, ¶ 67.  The corrective action was comprised of staff training and additional practices to improve communication and better identify "special needs" detainees.  *Id.*

Plaintiff claims that he never responded to CRCL's letter because it did not provide "any personal redress for the physical and emotional anguish that Plaintiff was subjected to", despite CRCL specifically stating in its initial correspondence that it did not have such authority.  DE 24, ¶ 67; DE 24-2.  Plaintiff claims that his now-entitled "claim" was "finally denied" by DHS on September 21, 2020.  *Id.*  Plaintiff again blatantly mischaracterizes CRCL's letter, wherein CRCL states regarding its proposed informal resolution, "If you agree to the above terms, please respond within ten (10) calendar days of your receipt of this letter.  At that time, CRCL will consider the complaint *informally resolved* and will close the complaint.  If we do not hear from you within that timeframe, we also will consider this complaint closed."  DE 24-3.  Nowhere does CRCL ever clearly state that Plaintiff's "claim" was ever denied in any sense.

6

## LEGAL STANDARD

**I.      Rule 12(b)(1)**

Subject matter jurisdiction underlies a court's power to hear a case.  *DeRoy v. Carnival Corporation*, 963 F.3d 1302, 1311 (11th Cir. 2020) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).   A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may present a facial or a factual attack to subject matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta–Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *Tundidor v. Miami-Dade Cty.*, 108 F. Supp. 3d 1312, 1316 (S.D. Fla. 2015), *aff'd* 831 F.3d 1328 (11th Cir. 2016).  A dismissal for lack of subject matter jurisdiction can rest "on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced by the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *McElmurray*, 501 F.3d at 1251 (internal quotes omitted).  The Eleventh Circuit held recently, "it is the facts and substance of the claims alleged, not the jurisdictional labels attached, that ultimately determine whether a court can hear a claim." *DeRoy*, 963 F.3d at 1311 (citing *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  "[T]he burden is on the plaintiff to prove that jurisdiction exists…" *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citation omitted).

This Court is not limited to an inquiry into undisputed facts when assessing the propriety of a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Instead, this Court "may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.*, 2020 WL 43221, at *2–3 (S.D. Fla. Jan. 3, 2020) (citing *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991)), *aff'd*, 824 Fed. Appx. 680 (11th Cir. 2020).  "When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to

independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 Fed. Appx. 879, 880 (11th Cir. 2008) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

"It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotations and citations omitted). "A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Id*. Thus, without a clearly established waiver of immunity, federal courts lack subject matter jurisdiction to hear *any* suits against the federal government itself or its agencies. *Id*.; *Pollinger v. Internal Revenue Service Overnight Board*, 362 Fed. Appx. 5, 7 (11th Cir. 2010). As a result, without an explicit waiver in accordance with the specific terms of any consent to be sued in any court, all claims against the United States require dismissal.

## II.      Rule 12(b)(6)

"To survive a motion to dismiss for failure to state a claim [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss pursuant to Rule 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations and internal quotation

marks omitted); *Boles v. Riva*, 565 Fed. Appx. 845, 846 (11th Cir. 2014).  Allegations of fact "must be enough to raise a right to relief above the speculative level …." *Twombly*, 550 U.S. at 555.

In deciding a motion to dismiss, a court begins by identifying pleadings that are no more than legal conclusions, and therefore "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (courts are not "bound to accept as true a legal conclusion couched as a factual allegation.").  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Ultimately, the plaintiff's complaint must allege sufficient facts to "nudge[] [his] claims across the line from conceivable to plausible…." *Twombly*, 550 U.S. at 547.  The plausibility standard is not akin to a "probability requirement", and "the mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Iqbal*, 556 U.S. at 678.  In fact, "courts may infer from factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather that the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682)).

A court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, documents that are central to the claims in the complaint, and matters about which the court may take judicial notice.  *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010); *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006). The Court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment because the documents are capable of accurate and ready determination.

*Makro Capital of America, Inc. v. UBS AG*, 372 F. Supp. 2d 623, 627 (S.D. Fla. 2005) (citing

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999); *Broward Garden Tenants*

*Ass'n v. E.P.A.*, 157 F. Supp. 2d 1329, 1335 n.8 (S.D. Fla. 2001)).

## ARGUMENT

Plaintiff's Amended Complaint contains three tort causes of action pled against the United

States pursuant to the Federal Tort Claims Act ("FTCA"): intentional infliction of emotional

distress, general negligence, and negligent supervision.  All three of Plaintiff's claims should be

dismissed for the reasons set forth herein.

## I.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's FTCA Claims

Plaintiff's Amended Complaint and the exhibits attached thereto fail to establish that this

Court has the requisite subject matter jurisdiction to hear Plaintiff's FTCA claims.

The FTCA, codified in 28 U.S.C. §§ 1346(b), 2671 *et seq.*, is the exclusive means provided

by statute for the recovery against the United States for certain claims sounding in tort.  In pertinent

part, 28 U.S.C. § 2675(a) provides as follows:

> "An action shall not be instituted upon a claim against the United States for
> money damages for injury or loss of property or personal injury or death
> caused by the negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or employment,
> *unless the claimant shall have first presented the claim to the appropriate*
> *Federal agency and his claim shall have been finally denied by the agency*
> *in writing and sent certified or registered mail*." (emphasis added).

The FTCA does not create a federal cause of action against the United States.  Instead, the

FTCA is a specific waiver of the sovereign immunity enjoyed by the United States and must be

strictly construed.  *Biggins v. United States*, 2005 WL 8155945, at *3 (S.D. Fla. 2005) (citing

*Phillips v. United States*, 260 F.3d 1316, 1317 (11th Cir. 2001)).

The FTCA authorizes actions against the United States itself only under the specific

conditions and parameters codified in the FTCA.  28 U.S.C. §§ 1346(b), 2679(b); s*ee, e.g., Jude*

*v. Comm'r of Soc. Sec.*, 908 F.3d 152, 157 n.4 (6th Cir. 2018) ("[T]he only proper defendant in an

FTCA claim is the United States.").   For instance, the FTCA requires that any action pled against

the United States must be premised upon the negligent or wrongful act or omission of *any employee*

*of the Government*.   28 U.S.C. § 2675(a).   Claims arising out of any actions or inactions of federal

independent contractors are therefore unavailable under the FTCA.   *Tisdale v. United States*, 62

F.3d 1367, 1371 (11th Cir. 1995) ("the United States is not liable for the acts or omissions of the

independent contractors that it employs.")

　　　　Additionally, a foundational jurisdictional prerequisite for maintaining a lawsuit pursuant

to the FTCA, as Plaintiff purports to do, is the timely filing of an administrative claim and timely

exhaustion of the administrative remedies related to this claim.   28 U.S.C. § 2675(a); *Simpson v.*

*Holder*, 184 F. Appx. 904, 908 (11th Cir. 2006).   The administrative claim is one of the most

critical documents in the FTCA analysis and it is certainly not the equivalent of a generalized

"complaint" about potential misconduct.   Rather, the administrative claim itself must also satisfy

specific requirements.   In pertinent part, 28 C.F.R § 14.2(a) provides as follows:

> "For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a
> claim shall be deemed to have been presented when a Federal agency
> receives from claimant, his duly authorized agent or legal representative, an
> executed Standard Form 95 or other written notification of an incident,
> accompanied by a claim for money damages in a sum certain for injury to
> or loss of property, personal injury, or death alleged to have occurred by
> reason of the incident; and the title or legal capacity of the person signing,
> and is accompanied by evidence of his authority to present a claim on behalf
> of the claimant as agent, executor, administrator, parent, guardian, or other
> representative."

The FTCA's presentment requirement therefore "has four elements: (1) notification of the

incident; (2) demand for a sum certain, (3) title or capacity of the person signing; and (4) evidence

of the person's authority to represent the claimant." *Chronis v. United States*, 932 F.3d 544, 546

(7th Cir. 2019) (Barrett, J.); *Suarez v. United States,* 22 F.3d 1064, 1066 (11th Cir. 1994).   The

demand for a sum certain is particularly important because it limits the amount of monetary damages available for recovery in any subsequent federal action. *See* 28 U.S.C. § 2675(b) ("Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency…").

The FTCA statutorily authorizes two separate and distinct periods of limitations, though both apply with equal force. First, 28 U.S.C. § 2401(b) establishes that "a tort claim against the United States shall be forever barred unless it is presented in writing *to the appropriate Federal agency* within two years after such claim accrues...." 28 U.S.C. § 2401(b) (emphasis added). 28 U.S.C. § 2401(b) also establishes that "a tort claim against the United States shall be forever barred…unless action is begun within six months *after the date of mailing…of notice of final denial of the claim by the agency to which it was presented*." *Id.* (emphasis added). A plaintiff must "exhaust his administrative remedies *prior* to filing suit" and may not file a lawsuit and then later attempt to cure his failure to exhaust his administrative remedies by belatedly submitting his administrative claim. *See McNeil v. United States*, 508 U.S. 106, 107-13 (1993) (emphasis added).

In the instant matter, notwithstanding the other deficiencies in Plaintiff's Amended Complaint to be discussed below, Plaintiff failed to abide by the statutory provisions adopted by Congress and explicitly outlined within the United States Code and the Code of Federal Regulations for FTCA actions. Plaintiff goes to considerable lengths to suggest that the "complaint" he submitted with the ABA is a proper administrative claim. Quite simply, it is not, even under the most liberal interpretation. The applicable documents are annexed to the Amended Complaint as exhibits. At the most basic level, none of these documents are a Standard Form 95 or any other properly composed written notification that complies with the specific requirements of the federal regulation cited above.

Exhibit A is an email sent from a staff attorney of the ABA to the ICE Miami Field Office general email address on January 31, 2020 with a typewritten letter from Plaintiff dated December 27, 2019 as an attachment.  DE 24-1.  The email from the ABA forwarded the typewritten letter from Plaintiff to ICE's Miami Field Office, not to the appropriate *federal agency* in the appropriate manner.  Though Plaintiff claims otherwise in his Amended Complaint, this is easily disproven by Exhibit A itself and the email addresses contained within it.  DE 24-1.  For the Court's indulgence, ICE very clearly describes the correct process for presenting an administrative claim for an FTCA action against ICE employees on its website.[1]  The website is easily located with a simple search using Google and the search term "FTCA ICE".  The website then very clearly identifies the Office of the Principal Legal Advisor, District Court Litigation Division in Washington, DC as the proper entity to submit any administrative claim to.  ICE even includes a physical address and an email address for the Office of the Principle Legal Advisor for a claimant's convenience.  The email address listed is very clearly not the email address that the ABA sent Plaintiff's "complaint" to.[2] The ABA, as attorneys, at the very least should have known this or been capable of discovering it.

On this note, Plaintiff claims that the ABA submitted his typewritten letter to CRCL on his behalf.  However, the contents of the email itself are, at best, ambiguous as to whether the ABA actually or sufficiently represents Plaintiff in any legal capacity as his duly authorized agent or legal representative relating to this matter or this alleged incident.  To this extent, and contrary to Plaintiff's arguments, there is nothing to suggest that the ABA or the individual attorney who authored the email included any evidence of her authority to present any FTCA administrative

---

[1] https://www.ice.gov/about-ice/opla/ftca (last accessed June 14, 2021).
[2] OPLA-DCLD-TortClaims@ice.dhs.gov

claim of any kind on behalf of Plaintiff, whether in this matter or any other.  This is inapposite to the factors outlined in 28 C.F.R § 14.2(a).  *Chronis*, 932 F.3d at 546; *Suarez,* 22 F.3d at 1066.

Neither the ABA email nor Plaintiff's typewritten letter contains any dollar figure of any kind or any demand for any specific dollar figure of any kind.  This is an obvious violation of 28 U.S.C. 2675(b).  Instead, the ABA email discusses Plaintiff's ongoing ICE detention due to an alleged medical hold and requests "a resolution to [Plaintiff's] case so that he might receive the medical care he needs as soon as possible." *Id.*  Even when construed in the light most favorable to Plaintiff, such a statement is woefully insufficient to satisfy the FTCA's presentment requirements.  *See Chronis*, 932 F.3d at 547 ("a claimant who *neither* makes it clear that she is demanding money from the agency *nor* says how much she is demanding thwarts the settlement process envisioned by the FTCA"); *Suarez,* 22 F.3d at 1066 (finding the administrative claim must state the exact dollar amount of damages being sought).

Exhibit B to Plaintiff's Amended Complaint is a letter emailed from CRCL in response to the email from the ABA.  DE 24-2.  Exhibit B only strengthens the United States' arguments for dismissal.  As noted above, CRCL clearly explains that its authority is limited to review and assessment of information concerning allegations of abuse of civil rights, civil liberties, profiling on the basis of race, ethnicity, or religion, by employees and officials of DHS, or failure to accommodate an individual's disability under Section 504 of the Rehabilitation Act of 1973.  *Id.*  CRCL never once stated that its authority includes review of claims of negligence or other tortious conduct of any kind.  Nowhere does CRCL ever list any of the FTCA statutes as sources of rights and remedies available through its review.   The reason for this is simple: CRCL is not the proper entity to send an administrative claim.  This is obvious from CRCL's response to the ABA email

14

on behalf of Plaintiff: CRCL explicitly advises that it "is not able to obtain any legal remedies or damages on your behalf". *Id.*

Exhibit C is a letter from CRCL to Plaintiff dated September 11, 2020. Exhibit C was sent directly to Plaintiff, not to the ABA, despite CRCL requesting in their prior letter to the ABA that CRCL be provided with the name and contact information of any attorney retained by Plaintiff. DE 24-2; 24-3. This is another clear indication that the ABA was not Plaintiff's counsel and had no legal representative authority of any kind for Plaintiff. More importantly, Exhibit C further establishes that Plaintiff affirmatively *failed* to properly exhaust any administrative remedies prior to filing the instant FTCA lawsuit. Nowhere does Plaintiff state that his alleged administrative claim was ever denied in a written document that was sent by DHS to Plaintiff by certified or registered mail. Exhibit C indicates that it was sent directly to Plaintiff by *electronic mail*, in blatant contradiction to the express requirements of 28 U.S.C. § 2675(a). DE 24-3.

In no way does Exhibit C indicate that any alleged "complaint" from Plaintiff was denied in a manner indicating a final denial, as further required by 28 U.S.C. § 2675(a) and despite Plaintiff's leap in logic to the contrary. Exhibit C indicates only that "ICE had agreed to informally resolve this matter…" in a manner having nothing to do with monetary compensation for any alleged injuries suffered. *Id.* Quite simply, to "close the complaint" after offering an informal resolution by means of certain institutional adjustments is an entirely different outcome from a final denial of an administrative claim for a specific sum of monetary damages.

It is Plaintiff's burden to establish his compliance with *all* FTCA administrative prerequisites to proceed with an FTCA claim against the United States. Based solely on his Amended Complaint and its exhibits, Plaintiff failed to establish that he ever filed a legally sufficient administrative claim *and* that Plaintiff's legally sufficient administrative claim was

adjudicated to the point of DHS's issuance of a *final denial in writing,* sent to Plaintiff by *certified or registered* mail.  28 U.S.C. § 2675(a).   Since Plaintiff cannot establish that he exhausted his administrative remedies, or that he even properly pursued his administrative remedies at all, Plaintiff cannot establish, as is his burden, that this Court has subject matter jurisdiction to render any judgment on his FTCA claims.   *See Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013) (explaining that while the FTCA provides a limited waiver of the United States' sovereign immunity for tort claims, a federal court may not exercise jurisdiction over a suit unless claimants first file administrative claims).  Plaintiff's FTCA claims must therefore be dismissed.

## II.    Plaintiff's Complaint Fails to State a Claim Upon Which Relief Can Be Granted

Assuming, *arguendo*, that the Court finds subject matter jurisdiction sufficient to hear Plaintiff's FTCA claims against the United States, Plaintiff's Amended Complaint still fails to state a cognizable claim upon which this Court can grant relief against the United States.

To begin, the United States notes several additional legally untenable aspects in Plaintiff's Amended Complaint and Plaintiff's FTCA claims in general.  First, Plaintiff demands a jury trial and seeks attorney's fees for all three of his FTCA claims against the United States.  DE 24, ¶¶ 137, 146, 157.  A jury trial is statutorily barred for any FTCA claim against the United States.  28 U.S.C. § 2402 ("any action against the United States under section 1346 shall be tried by the court without a jury…").  As a result, should any FTCA claim against the United States proceed in this matter, such claims must be tried by this Court separately from any other claims that are tried by a jury in this matter.  Likewise, the Eleventh Circuit has ruled that attorney's fees are expressly unavailable in an FTCA matter. *Joe v. United States*, 772 F.2d 1535, 1537 (11th Cir. 1985) ("The FTCA does not contain the express waiver of sovereign immunity necessary to permit a court to

16

award attorney's fees against the United States directly under that act.").  As a result, Plaintiff's claims for attorney's fees against the United States should be separately dismissed as unavailable.

Next, if the Court accepts Plaintiff's typewritten letter as a proper administrative claim of any kind, it must be noted that Plaintiff's typewritten letter is dated December 27, 2019.  DE 24-1.  Each transfer that Plaintiff described in his Amended Complaint, including his transfer by the alleged ICE Officers on April 3, 2020, took place months after Plaintiff wrote his letter and even after the ABA emailed it to ICE's Miami Field Office.  As a result, Plaintiff's FTCA claims against the United States necessarily cannot rest on the transfer by the ICE Officers, as they were never mentioned anywhere in Plaintiff's typewritten letter or the ABA's email and thus never properly presented in any sense at all.  DE 24-1.  Because all three of Plaintiff's FTCA claims purportedly rely on this transfer as a basis for the claims, Plaintiff's claims must be dismissed to the extent that they rely on events that were never even included in an administrative claim. DE 24, ¶¶ 133-135, 140-142, 153-155.  Each of Plaintiff's FTCA claims must be evaluated against this backdrop.

Lastly, as mentioned above, the FTCA requires that any action pled against the United States must be premised upon the negligent or wrongful act or omission of *any employee of the Government*.  28 U.S.C. § 2675(a); *Tisdale*, 62 F.3d at 1371.  Dr. Yglesias is a nurse practitioner and Nurse Farinas is a nurse, both through ICE Health Services.  The United States submits that Dr. Yglesias is not an employee of the Government as Plaintiff contends.  Instead, Dr. Yglesias is a contractor and was serving in such a capacity when the alleged events occurred in this matter.  The undersigned is investigating the nature of Dr. Yglesias's contract and will supplement this application accordingly upon confirmation.  However, suffice to say, any portion of Plaintiff's FTCA claims against the United States that arise from any actions or omissions of Dr. Yglesias as an independent contractor must be dismissed as inapposite to 28 U.S.C. § 2675(a).

Turning to Plaintiff's individual FTCA claims, Plaintiff pled three separate causes of action: intentional infliction of emotional distress, generalized negligence, and negligent supervision.  Even if the Court reaches this depth of analysis, Plaintiff's FTCA tort claims are untenable, both factually and legally.

The standard for determining what constitutes outrageous behavior is quite high for an IIED claim under Florida law.  *Halstead v. LBAM Inv. Grp., LLC*, 2016 WL 9113446, at *2 (N.D. Fla. Nov. 7, 2016) (citing *DeShiro v. Branch*, 1996 WL 663974, at *4 (M.D. Fla. Nov. 4, 1996)). In regard to Nurse Farinas, her conduct is identical for each of Plaintiff's FTCA claims.  Nurse Farinas allegedly made rude comments about Plaintiff's unidentified "disability" and immigration status.  DE 24, ¶¶ 28, 131, 151.  "Florida courts have been reluctant to find claims for intentional infliction of emotional distress based solely on allegations of verbal abuse." *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) (citing *De La Campa v. Grifols Am., Inc.,* 819 So.2d 940, 943–44 (Fla. 3d DCA 2002) (per curiam)); *see also Williams v. Worldwide Flight SVCS., Inc.*, 877 So.2d 869, 870 (Fla. 3d DCA 2004) (finding liability for IIED "does not extend to mere insults, indignities, threats, or false accusations."); *Lay v. Roux Labs., Inc.,* 379 So.2d 451, 452 (Fla. 1st DCA 1980) (per curiam) ("vicious verbal attacks" that included the use of humiliating language and racial epithets did not reach the level of outrageousness required for an IIED claim.).

Indeed, Florida courts have consistently dismissed cases alleging discriminatory and offensive behavior and language against individuals.  *See Chiles v. Symon Says Enterprises, Inc.*, 2014 WL 201689, at *2 (M.D. Fla. Jan. 17, 2014) (citations omitted).  In cases where Florida courts have permitted a plaintiff to move forward with an IIED claim, they often involve threats of death, rape, or severe bodily harm to the plaintiff or family members. *Chiles*, 2014 WL 201689, at *2 (citing *Johnson v. Thigpen,* 788 So.2d 410, 413 (Fla. 1st DCA 2001); *Nims v. Harrison,* 768

18

So.2d 1198 (Fla. 1st DCA 2000) (finding sufficient outrageousness to state an IIED claim where the allegations involved death threats and threats to rape the plaintiff's children and other family relatives)).  Notwithstanding the complete lack of detail regarding when Nurse Farinas made the alleged comments, it is clear none of the factors outlined above were included in the comments.

Regarding Plaintiff's negligence claim, Plaintiff premised him claim only upon the IHSC Staff and ICE Officers' alleged failure to provide his medication and failure to provide Plaintiff with unspecified "reasonable accommodations" despite his "disabilities".  As noted above, Plaintiff's allegations regarding his transfers and wheelchair accessible facilities were not specifically or even vaguely a portion of any administrative claim.  As a result, he cannot now pursue such claims without properly exhausting his administrative prerequisites for these claims. Regarding Nurse Farinas, Plaintiff never claims that she had anything to do with any delay in receipt of medication at any point during Plaintiff's detention.  Despite the overall vagueness of Plaintiff's allegations, Plaintiff only points to Dr. Yglesias as the individual who "failed to provide Plaintiff his required daily medication", albeit without many critical details.  DE 24, ¶¶ 27, 130, 150.  There is nothing about a vaguely alleged verbal insult that can sustain a claim for negligence or any of its factors.  Without any further factual predicate, there is no reasonable assumption available to allow a claim for general negligence to proceed against the United States in this matter.

Regarding Plaintiff's claim for negligent supervision, there is nothing in Plaintiff's Amended Complaint that in any way establishes that any supervisor or employer of any federal employees was on notice that any of its federal employees were unfit for their specific duties in the instant matter.  Negligent supervision exists when the defendant "negligently placed [the plaintiff/purported victim] under the supervision of [an employee], when [the defendant] either knew or should have known that [the employee] had the propensity to commit [the torts

committed]." *Acts Ret.-Life Communities Inc. v. Est. of Zimmer*, 206 So. 3d 112, 114 (Fla. 4th DCA 2016) (citing *Malicki v. Doe,* 814 So.2d 347, 362 (Fla. 2002)). Plaintiff's Amended Complaint is woefully deficient of any factual basis to allow the tremendous leap in logic needed to salvage a negligent supervision claim. This is without regard to the lack of any indication that Plaintiff complained about supervision at Krome in any way in an administrative claim. DE 24-1.

Finally, as the United States has noted repeatedly, Plaintiff's Amended Complaint is woefully lacking in the well-pleaded factual allegations necessary to survive a motion to dismiss. On the contrary, Plaintiff's Amended Complaint is comprised primarily of speculative allegations and legal conclusions that deserve no deference or assumption of truth from this Court. *Iqbal*, 556 U.S. at 679; *Papasan*, 478 U.S. at 286 (courts are not "bound to accept as true a legal conclusion couched as a factual allegation."). The most glaring example is Plaintiff's claim regarding the "disability badge". Plaintiff's suggestion that he deserved a disability badge without providing any detail about the medical criteria or evaluation process for a disability badge's disbursement or is the quintessential legal conclusion. It is entirely possible, based on Plaintiff's Amended Complaint, that a disability badge is reserved for detainees who have difficulty walking, rather than for other underlying health conditions. After all, Plaintiff admits he was given a disability badge after he returned from Kendall Regional Hospital with a knee injury. For Plaintiff to suggest that he should have been given one because of epilepsy is impermissibly speculative.

## CONCLUSION

For the reasons set forth above, Plaintiff's FTCA claims should be dismissed. Plaintiff was given an opportunity to amend. Since the Amended Complaint's defects cannot be cured, Plaintiff's Amended Complaint against the United States should be dismissed with prejudice.

Respectfully submitted.

20