## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:20-cv-24462-KMW

ALEJANDRO MUGABURU,

      Plaintiff,

v.

AKIMA GLOBAL SERVICES, LLC, *et al.*,

      Defendants.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT UNITED STATES OF AMERICA'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Alejandro Mugaburu, by his undersigned counsel, hereby submits this Response in opposition to Defendant United States of America's (the "Government") Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 32], and states as follows:

### FACTUAL BACKGROUND

The United States is the sovereign federal government which operates several detention centers, including Krome North Service Processing Center ("Krome"), Glades County Detention Center ("Glades"), and Baker County Facility ("Baker"). Am. Compl., ¶ 13. On July 11, 2019, Plaintiff was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") and was processed into Krome. *Id.*, ¶ 22. Upon entering ICE's custody, Plaintiff informed a registered nurse that he suffers from several medical conditions, including epilepsy, asthma, and cardiovascular, cholesterol, and hypertension problems. *Id.* Plaintiff reported these ailments and his need for medication to medical staff at Krome. *Id.*

Detainees with disabilities at Krome are usually given a "disability badge," which permits them to remain on first floor sleeping quarters and allows for bottom bunk sleeping arrangements

1

in order to minimize the risk of injuries and falls. *Id.*, ¶ 23. Although Plaintiff reported his medical conditions, he was not given a disability badge. *Id.*, ¶ 24. Plaintiff was assigned top bunk sleeping arrangements and second floor sleeping quarters. *Id.* Plaintiff pleaded with a guard for a bottom bunk bed due to his broken arm and the guard complied. *Id.*, ¶ 25. However, Plaintiff was kept on the second floor sleeping quarters despite his epilepsy and other conditions. *Id.*

After his arrival at Krome, Plaintiff was subjected to a period of three consecutive days without his epilepsy medication and seventeen days without any of the other medications he takes for his other conditions. *Id.*, ¶ 27. The Government asserts that "Plaintiff does not allege that any of his medications were ever deliberately or maliciously withheld from him." Mot., p.2. However, this is a reasonable inference since Plaintiff did not receive his daily medication "despite multiple requests." Am. Compl., ¶ 29. On September 14, 2019, Plaintiff lost consciousness and tumbled down a flight of stairs. *Id.*, ¶ 30. This incident, which Plaintiff believes was a seizure induced by the lack of medication, left him with significant injuries. *Id.*, ¶ 31. This seizure caused Plaintiff to lose consciousness for three hours, and he suffered multiple physical injuries, including an injury to his left knee, which he still is not able to bend or walk on. *Id.*

After his seizure-induced fall, Plaintiff was taken to Kendall Regional Hospital. *Id.*, ¶ 33. Plaintiff was recommended physical therapy, hot/cold treatment therapies, and muscle massages to treat the musculoskeletal pain resulting from the fall. *Id.* However, Plaintiff was not treated for his leg injuries at Kendall Regional Hospital. *Id.* On September 15, 2019, Plaintiff was discharged from Kendall Regional Hospital despite feeling severe pain in his legs and not being able to walk. *Id.*, ¶ 35. Plaintiff was then taken into Krome's Medical Housing Unit ("MHU"). *Id.*, ¶ 37. Despite receiving a disability badge due to his injuries, medical staff at the MHU forced Plaintiff to walk on his legs even though he had severe pain and could not stand properly. *Id.*, ¶ 38. At first, Plaintiff

was given crutches, which the medical staff constantly pressed him to use, despite the fact that his broken arm made them extremely difficult to use. *Id.* Plaintiff was only given a wheelchair after many repeated requests. *Id.*

On September 19, 2019, Plaintiff was discharged from MHU and placed in "segregation"— a special unit that houses detainees in near-complete isolation from the general population of the center. *Id.*, ¶ 39. Plaintiff remained in segregation for around two weeks, where he did not have access to a wheelchair-accessible bathroom or other facilities accessible by wheelchair. *Id.*, ¶ 40. Despite his previous fall due to a lack of medication, Plaintiff was left without medication for blocks of five consecutive days at a time. *Id.*, ¶ 46. The Government again claims that Plaintiff does not allege that "any specific individual delayed his medication intentionally or deliberately." Mot., p.4. However, this is not a hard inference to make given the fact that "five days would consistently lapse" before Plaintiff received his required daily medication. Am. Compl., ¶ 46. At the very least, it suggests a gross level of indifference for human life on the part of the Government.

Around February 2020, Plaintiff was transferred to the Monroe County Detention Center ("Monroe"), in Key West, Florida. *Id.*, ¶ 47. Because the vehicle used to transport Plaintiff from Krome to Monroe was not wheelchair accessible, the guards "threw [him] into the vehicle like a sack of potatoes." *Id.*, ¶ 48. While at Monroe, Plaintiff was denied access to a chair during showers, which caused him to fall on one occasion, further aggravating his injuries. *Id.*, ¶ 49. On March 7, 2020, Plaintiff was transferred back to Krome. *Id.*, ¶ 50. On April 3, 2020, Plaintiff was again transferred out of Krome, this time to Glades, in central Florida. *Id.*, ¶ 51. Because the facilities at Glades were not wheelchair accessible, Plaintiff was placed in segregation for 14 days. *Id.*, ¶ 53. At Glades, Plaintiff was again denied his daily medication, for periods of up to three consecutive days. *Id.*, ¶ 54. On April 21, 2020, Plaintiff was transferred to Baker, in northern Florida. *Id.*, ¶ 56.

Plaintiff stayed at Baker for seven days before he was transferred back to Krome on May 1, 2020. *Id.*, ¶ 57. On May 7, 2020, Plaintiff was finally released from Krome. *Id.*, ¶ 58.

On January 31, 2020, the American Bar Association submitted a complaint with the Office for Civil Rights and Civil Liberties ("CRCL") of the U.S. Department of Homeland Security ("DHS") on behalf of Plaintiff. *Id.*, **Ex. A**. On February 12, 2020, CRCL sent a letter back to the American Bar Association, acknowledging its receipt of Plaintiff's complaint. *Id.*, **Ex. B**. In its letter, CRCL asserted it would "send [Plaintiff's] complaint to the DHS Office of Inspector General (OIG) for review." *Id.* CRCL also stated that once it had opened a formal complaint, "either [CRCL] or the appropriate DHS component [would] conduct an investigation into [Plaintiff's] concerns" and that CRCL would "ultimately notify [Plaintiff] of the outcome of the investigation." *Id.* According to CRCL, the purpose of its review process was to "assess if [Plaintiff's] complaint implicates issues that should be addressed by DHS management." *Id.*

On September 11, 2020, CRCL sent a letter to Plaintiff describing the grievances he had reported during his time in ICE custody. *Id.*, **Ex. C**. According to this letter, "CRCL opened a complaint to investigate whether ICE violated Section 504 [of the Rehabilitation Act] during [Plaintiff's] detention at Krome." *Id.* Having found a violation, CRCL decided to resolve Plaintiff's complaint "informally through a written agreement that describes the complaint and any agreed upon corrective action." *Id.* ICE "agreed to informally resolve this matter by implementing [certain] corrective action." *Id.* This included "facility staff training at Krome on the identification of detainees with special needs," distribution of "special needs passes," maintaining a "master list of detainees with special needs," the use of "color-coded wrist bracelets," and reviewing "local operating procedures." *Id.* According to the letter, if Plaintiff did not respond to ICE's offer "within ten (10) calendar days" (September 21, 2020), CRCL would "consider this complaint closed." *Id.*

4

Because the proposed corrective actions did not provide any personal redress for the physical and emotional anguish that Plaintiff was subjected to, Plaintiff did not respond to the offer from ICE. Therefore, Plaintiff's claim was finally denied by DHS on September 21, 2020. On October 29, 2020, Plaintiff filed his initial Complaint against Akima Global Services ("AGS"), DHS, and ICE. On May 24, 2021, Plaintiff filed an Amended Complaint. Plaintiff alleges three claims against the Government under the Federal Tort Claims Act ("FTCA") for intentional infliction of emotional distress, negligence, and negligent supervision. On June 14, 2021, the Government filed its Motion to Dismiss Plaintiff's Amended Complaint claiming this Court lacks subject matter jurisdiction over Plaintiff's FTCA claims and that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

## **LEGAL STANDARD**

### I.     **Rule 12(b)(1)**

Under Fed. R. Civ. P. 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Valera v. FEMA*, 2020 U.S. Dist. LEXIS 35602, at *2 (S.D. Fla. Feb. 28, 2020) (quoting *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may be asserted on "either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs.*, 572 F.3d 1271, 1279 (11th Cir. 2009). In a facial challenge, the Court need only determine if the plaintiff has "sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a factual challenge, the Court "must give the plaintiff an opportunity for discovery . . . that is appropriate to the nature of the motion to dismiss." *Nat'l Ass'n of the Deaf v.*

*Florida*, 980 F.3d 763, 775 (11th Cir. 2020). If the jurisdictional challenge implicates the merits of the underlying claims, the Court should "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Yela v. Trending Media Grp., Inc.*, 2020 U.S. Dist. LEXIS 200985, at *3 (S.D. Fla. Sep. 10, 2020) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

## II.    Rule 12(b)(6)

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitle to relief." Fed. R. Civ. P. 8(a)(2). Under this pleading standard, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). When the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed *Id.* at 557. "[T]he standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.2d 1308, 1309-10 (11th Cir. 2008). Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

## <u>ARGUMENT</u>

## I.    The Court has subject matter jurisdiction over Plaintiff's FTCA claims.

The Government argues that the Court lacks subject matter jurisdiction over Plaintiff's FTCA claims because Plaintiff allegedly failed to exhaust his administrative remedies. Mot., p.12. Under the FTCA, an action may not be instituted "unless the claimant shall have first presented

the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). The statute therefore contemplates two requirements: (1) presentment of the claim and (2) denial of the claim.

### a. Plaintiff presented his claim to DHS.

The Government argues Plaintiff did not comply with 28 C.F.R § 14.2(a), which contains four elements for the presentation of a claim, namely: "(i) notification of the incident; (ii) a demand for a sum certain; (iii) the title or capacity of the person signing; and (iv) evidence of this person's authority to represent the claimant." *Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997). However, although 28 C.F.R. § 14.2(a) is "instructive as to the presentation of a claim, it is not jurisdictional." *Blair v. IRS*, 304 F.3d 861, 865 (9th Cir. 2002). Indeed, "Congress did not intend to treat regulations promulgated pursuant to section 2672 as jurisdictional prerequisites under section 2675(a)." *Warren v. United States Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 778 (9th Cir. 1984); *Byrne v. United States*, 804 F. Supp. 577, 581 (S.D.N.Y. 1992) (finding that many courts have "declined to find that strict compliance with the regulations is a jurisdictional requirement"); *Kinlichee v. United States*, 929 F. Supp. 2d 951, 958 (D. Ariz. 2013) (finding the additional requirements in 28 C.F.R § 14.2(a) are "not jurisdictional").

Still, the Government claims that DHS did not receive "a Standard Form 95 or any other properly composed written notification." Mot., p.12. However, there is no question that Plaintiff notified DHS in writing of his claims. On January 31, 2020, the American Bar Association—on behalf of Plaintiff—submitted a complaint with the Office for Civil Rights and Civil Liberties ("CRCL"), which is part of DHS. Am. Compl., **Ex. A**. The Government claims this communication does not contain "any dollar figure of any kind or any demand for any specific dollar figure of any kind." Mot., p.14. However, the law of the Eleventh Circuit "takes a liberal approach to the sum

certain requirement." *Bernard v. Calejo*, 17 F. Supp. 2d 1311, 1315 (S.D. Fla. 1998); *see also Adkins v. United States*, 896 F.2d 1324, 1326 (11th Cir. 1990) ("this Circuit takes a somewhat lenient approach to the 'sum certain' standard"). Indeed, "even where a claimant ha[s] not specifically stated the value of the claim, attaching medical bills and repair estimates to the claim notice could suffice." *Tidd v. United States*, 786 F.2d 1565, 1567 n.6 (11th Cir. 1986) (citing *Molinar v. United States*, 515 F.2d 246 (5th Cir. 1975)). In fact, the requirement "could be met by merely providing the agency with facts from which it could estimate the value of the claim." *Id.* (citing *Wardsworth v. United States*, 721 F.2d 503 (5th Cir. 1983)).

In concluding that the plaintiff's tort claims were not barred, the court in *Bernard* found significant "the lack of any evidence that the government followed up on Plaintiff's letter to the INS by sending him a Standard Form 95 'Claim for Damage or Injury' or otherwise informing him that further information was required." *Bernard*, 17 F. Supp. 2d at 1315. The court concluded that "although plaintiffs have a responsibility to initially attempt to comply with administrative requirements, the government is also under an obligation to communicate with claimants and investigate claims in good faith." *Id.* On February 12, 2020, CRCL sent a letter to the American Bar Association, acknowledging its receipt of Plaintiff's complaint. Am. Compl., **Ex. B**. However, as in *Bernard*, DHS never sent Plaintiff a Standard Form 95 or asked Plaintiff to provide DHS with a "sum certain." Rather, CRCL stated it would "send [Plaintiff's] complaint to the DHS Office of Inspector General (OIG) for review." *Id.* CRCL also stated that once a formal complaint had been opened, "either [CRCL] or the appropriate DHS component [would] conduct an investigation into [Plaintiff's] concerns" and that CRCL would "ultimately notify [Plaintiff] of the outcome of the investigation." *Id.* According to CRCL, the purpose of its review process was to "assess if [Plaintiff's] complaint implicates issues that should be addressed by DHS management." *Id.* This

letter is prima facie evidence that DHS was notified of Plaintiff's claims. Therefore, Plaintiff has established that he presented his claim to the appropriate Federal agency.

**b. DHS finally denied Plaintiff's claim.**

On September 11, 2020, CRCL sent another letter to Plaintiff describing the grievances he had reported during his time in ICE custody. Am. Compl., **Ex. C**. According to this letter, "CRCL opened a complaint to investigate whether ICE violated Section 504 [of the Rehabilitation Act] during [Plaintiff's] detention at Krome." *Id.* Having found a violation, CRCL decided to resolve Plaintiff's complaint "informally through a written agreement that describes the complaint and any agreed upon corrective action." *Id.* According to the letter, if Plaintiff did not respond to ICE's offer "within ten (10) calendar days" (i.e., September 21, 2020), CRCL would "consider this complaint closed." *Id.* Because the proposed actions did not provide any personal redress for the physical and emotional anguish that Plaintiff was subjected to, Plaintiff did not respond to the offer from ICE. Therefore, Plaintiff's claim was finally denied by DHS on September 21, 2020.

The Government argues that this letter cannot serve as a final denial of Plaintiff's claim because "it was sent directly to Plaintiff by *electronic mail*, in blatant contradiction to the express requirements of 28 U.S.C. § 2675(a)." Mot., p.15. In other words, the Government is arguing that because DHS did not comply with the FTCA, Plaintiff is now estopped from suing the government. Such a result clearly flies in the face of equity and should not be entertained by this Court. In any case, even if the Court found that the September 11, 2020, letter was not a final denial of Plaintiff's claims, the statute provides that "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim." 28 U.S.C. § 2675(a). More than six months have passed since Plaintiff, through the American Bar Association, presented his claim to DHS in January 2020. Therefore,

Plaintiff may deem DHS' failure to make a final disposition of his claim a final denial of the same. Because Plaintiff first presented his claim to DHS and his claim was finally denied by DHS (or DHS failed to make a final disposition of his claim more than six months ago), Plaintiff has exhausted his administrative remedies and may proceed against the Government under the FTCA.

> **c.   The Government is equitably estopped from arguing that Plaintiff did not file an administrative complaint.**

One who seeks to invoke the doctrine of equitable estoppel against the Government may do so if "Governmental actions amount to 'affirmative misconduct' and if four other requirements are met." *Pratte v. NLRB*, 683 F.2d 1038, 1041 (7th Cir. 1982). The four additional requirements are: (1) "the party to be estopped must know the facts"; (2) "this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended"; (3) "the party asserting estoppel must have been ignorant of the facts"; and (4) "the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury." *Id.*

On February 12, 2020, DHS confirmed to Plaintiff that CRCL had received his January 31, 2020, complaint. Am. Compl., **Ex. B**. In the February 12, 2020, letter, DHS goes so far as to state that it had "received your *complaint* on behalf of Alejandro Vincenzo Mugaburu-Tapia." *Id.* (emphasis added). The February 12, 2020, letter continuously refers to the January 31, 2020, communication as a "complaint" throughout its body—eighteen (18) times, to be precise. *Id.* Furthermore, on September 11, 2020, DHS confirmed that CRCL had "opened a complaint to investigate whether ICE violated Section 504 during [Plaintiff's] detention at Krome. *Id.*, **Ex. C**. In the September 11, 2020, letter, DHS offered to "informally resolve" Plaintiff's complaint by ordering that certain corrective actions be taken but refused to award Plaintiff any compensatory damages stemming from his mistreatment at the DHS facilities. *Id.* The September 11, 2020, letter further states that if Plaintiff agreed to the terms of the informal resolution, "CRCL will consider

the *complaint* informally resolved and will close the *complaint*." *Id.* (emphasis added). The February 12 and September 11, 2020, letters both contained within their respective subject lines "Complaint NO. 20-04-ICE 0350." *Id.*, **Exs. B**, **C**.

Though Plaintiff maintains that the January 31, 2020, letter constitutes an administrative complaint filed with DHS, assuming *arguendo* that it did not, the elements required to equitably estop the Government from arguing so are undeniably present. If the initial communication did not serve as a complaint, then DHS's continuous reference to it as a "complaint" misrepresented the true nature of the letter. DHS, and by extension the Government, handle numerous FTCA claims every year, and therefore are familiar with the provisions of 28 C.F.R. § 14.2(a). If the Government is to be believed, and the initial letter in fact did not satisfy the requirements to constitute an administrative complaint, DHS must have been aware of this fact.

The American Bar Association, on behalf of Plaintiff, provided DHS with Plaintiff's letter "to facilitate a resolution" to his case and assist him in "receiv[ing] the medical care he needs as soon as possible." *Id.*, **Ex. A**. The clear intent of the American Bar Association was to notify DHS that Plaintiff was filing an administrative complaint and to initiate the process of attaining Plaintiff the relief he requires. This and DHS's subsequent confirmation that the initial letter served as a complaint establishes that the Government intended Plaintiff to act on the representation that the letter served as an administrative complaint or had reason to believe that Plaintiff would rely on this representation. In fact, Plaintiff continues to believe, and at all times prior to the filing of this action has believed, that the initial communication served as an administrative complaint. At no point has Plaintiff acted in any way that would contradict his belief that the letter served as an administrative complaint.

In cases seeking to determine whether a party detrimentally relied on the assertions of

another, the decisive question is: "whether the plaintiff would have behaved the same way had []he known the true facts." *Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1107 (11th Cir. 2018). As evidenced by the February 12 and September 11, 2020, letters from DHS, Plaintiff was given every reason to understand that the January 31, 2020, letter properly served as an administrative complaint to DHS. *Id.*, **Exs. B**, **C**. Given the overwhelming confirmation offered by DHS that Plaintiff did in fact initiate a complaint regarding his abuse at DHS's facilities, Plaintiff's denial of the DHS's informal resolution offer, and Plaintiff's subsequent initiation of this action, it is clear that Plaintiff was intending to comply with all conditions precedent to the bringing of this action and would have behaved differently had he known that the initial letter would not be considered an administrative complaint. Thus, Plaintiff detrimentally relied on this representation by DHS and the Government is now equitably estopped from arguing otherwise now.

## II.     Plaintiff's Amended Complaint states a claim upon which relief can be granted.

### a.   Plaintiff's demand for jury trial

The Government protests that "Plaintiff demands a jury trial and seeks attorney's fees for all three of his FTCA claims against the United States." Mot., p.16. With respect to the demand for a jury trial, Plaintiff's Amended Complaint nowhere requests a jury trial specifically for his FTCA claims. Rather, Plaintiff has demanded a trial by jury "on all issues that are so triable." Am. Compl., p.30. Since FTCA claims are not triable by a jury, Plaintiff's demand does not pertain to them. Therefore, there is nothing improper about Plaintiff's demand.

### b.   Plaintiff's demand for attorney's fees

The Government also claims that "attorney's fees are expressly unavailable in an FTCA matter." Mot., p.16. However, the FTCA contains no such prohibition. In fact, under federal law, "[u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of

attorneys . . . to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(b). Additionally, under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.

The Government purports that Plaintiff's claim for attorney's fees against it should be dismissed as unavailable, citing *Joe v. United States*, 772 F.2d 1535 (11th Cir. 1985). Mot., p.16. *Joe* involved a medical malpractice action against the United States in which the plaintiff sought post-trial attorney's fees. In affirming the district court's denial of attorney's fees, the Eleventh Circuit made two interwoven holdings: (1) that the FTCA does not contain the express waiver of sovereign immunity necessary to permit an award of attorney fees against the United States; and (2) the attorney's fees provision applicable to the plaintiff's claim did not entitle plaintiff to an award of attorney's fees against the United States under Florida law. *Id.* at 1537.

However, a plaintiff suing under the FTCA is entitled to attorney's fees when there is a separate statutory provision permitting attorney's fees, and the law governing the location where the cause of action accrued entitles the plaintiff to attorney's fees for the specific causes of action so brought. *See id.*; *see also Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 577 (2003) (holding that attorney's fees are recoverable against the United States in FTCA actions if the law of the place where the tort occurred so provides). Here, there are two separate statutory provisions which permit an award of attorney's fees. First, because this is a civil action and attorney's fees are not expressly prohibited by the FTCA, under 28 U.S.C. § 2412(b), the Court may award Plaintiff his reasonable attorney's fees in the event he prevails in this action. Second, because Plaintiff's claims against the Government relate to tort claims under 28 U.S.C. § 2674, the Government is liable to Plaintiff to the same extent as a private individual would be under the same

13

circumstances. *See Molzof v. United States*, 502 U.S. 301, 305 (1992) (holding 28 U.S.C. § 2674 merely "prohibits awards of punitive damages," but does not prohibit compensatory damages or other damages which may have a "punitive effect").

  **c.   Plaintiff was not required to update DHS as his mistreatment continued.**

  Under 28 U.S.C. § 2675, all that is required of a person to institute a claim against the Government is that the "claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and by certified or registered mail." 28 U.S.C. § 2675(a). There is no statutory requirement to update the appropriate federal agency of continuous negligent or wrongful acts of its employees.

  Here, Plaintiff initially presented his claim to DHS on January 31, 2020. Am. Compl., **Ex. A**. In its February 12, 2020, letter, DHS states that either itself or CRCL will "conduct an investigation into [Plaintiff's] concerns." *Id.*, **Ex. B**. Through the course of this investigation, DHS or CRCL could have and should have discovered the continued abuse Plaintiff was being subjected to. The mistreatment and abuse suffered by Plaintiff at the hands of DHS employees concluded upon his release from Krome on May 7, 2020. *Id.*, ¶ 58. On September 11, 2020, DHS sent Plaintiff another letter confirming that "CRCL opened a complaint to investigate whether ICE violated Section 504 during [Plaintiff's] detention at Krome." *Id.*, **Ex. C**. Since DHS assured Plaintiff that it would be investigating Plaintiff's situation, in which investigation it would have discovered the continued mistreatment Plaintiff was suffering, Plaintiff had no reason to believe he had any duty to continually update DHS of his situation.

  **d.   Plaintiff's FTCA claims arise from the actions of federal employees.**

  Plaintiff's FTCA claims against the Government arise from the negligent or wrongful acts or omissions of federal employees, including Dr. Ernesto Yglesias ("Dr. Yglesias") and Daylen

14

Farinas ("Nurse Farinas"). The Government alleges that "Dr. Yglesias is not an employee of the Government as Plaintiff contends."[1] Mot., p.17. However, the Government presents no evidence to support this claim. In fact, the Assistant U.S. Attorney states he is still "investigating the nature of Dr. Yglesias's contract." *Id.*

In any case, when considering the Government's motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage*, 516 F.3d at 1284. In Plaintiff's Amended Complaint, he alleges that Dr. Yglesias is an employee of the ICE Health Service Corps ("IHSC"). Amend. Compl., ¶ 9. According to ICE's own representations, IHSC is an entity which falls within ICE.[2] Therefore, employees of IHSC, including Dr. Yglesias, are federal employees as defined in 28 U.S.C. § 2671.

### e. Plaintiff's FTCA claims are sufficiently pled.

Regarding Plaintiff's claim for intentional infliction of emotional distress, the Government claims "[t]he standard for determining what constitutes outrageous behavior is quite high for an IIED claim under Florida law." Mot., p.18. In particular, the Government argues that "allegations of verbal abuse" are not sufficient to support an IIED claim. *Id.* Yet, the Government admits that "threats of death, rape, or severe bodily harm to the plaintiff" are enough. *Id.* In his Amended Complaint, Plaintiff alleges that Nurse Farinas stated that "it would be better if he died." Am. Compl., ¶¶ 131, 151. This can reasonably be construed as a death threat, especially considering that it came from someone responsible for Plaintiff's wellbeing.

Regarding Plaintiff's negligence claim, the Government again states that Plaintiff cannot

---

[1] The Government does not make similar allegations regarding Nurse Farinas, seemingly admitting she was an employee of the Government.
[2] https://www.ice.gov/features/health-service-corps

"pursue such claims without properly exhausting his administrative prerequisites for these claims." Mot., p.19. Such argument has no merit for the reasons stated above. The Government also claims that Plaintiff does not allege that Nurse Farinas "had anything to do with any delay in receipt of medication at any point during Plaintiff's detention." *Id.* However, Plaintiff alleges that the IHSC Staff, which includes Nurse Farinas, "failed to provide the necessary medical care for Plaintiff's serious medical needs in deliberate indifference to the risk of serious harm" and "did not provide any accommodations to Plaintiff despite his disabilities and subjected him to unreasonably long periods of time without access to medication." Am. Compl., ¶ 121.

Regarding Plaintiff's claim for negligent supervision, the Government alleges that "there is nothing in Plaintiff's Amended Complaint that in any way establishes that any supervisor or employer of any federal employees was on notice that any of its federal employees were unfit for their specific duties in the instant matter." Mot., p.19. However, Plaintiff's seizure and fall due to a lack of medication should have put supervisors on notice that the IHSC Staff was unfit for their duties. Moreover, Plaintiff has averred that the ICE officers stated that they were following orders from their superiors. Am. Compl., ¶ 153. Therefore, the supervisors at Glades were not only aware of their employees' actions but condoned them as well.

As the Government does not note any other supposed deficiencies in Plaintiff's claims, it is clear that Plaintiff has sufficiently pleaded causes of action for intentional infliction of emotional distress, negligence, and negligent supervision.

## **LEAVE TO AMEND**

A district court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Where a plaintiff seeks leave of the court to amend his pleadings, "absent prejudice to the defendant, bad faith, or undue delay on the part of the plaintiff, it is an abuse of the court's

discretion to deny leave to amend." *Warner v. Alexander Grant & Co.*, 828 F.2d 1528, 1531 (11th Cir. 1987). None of these circumstances are present here. If and to the extent that this Court finds the Amended Complaint deficient in any respect, Plaintiff requests leave to amend to plead additional facts as necessary to cure any deficiency.

## <u>CONCLUSION</u>

WHEREFORE, Plaintiff Alejandro Mugaburu respectfully requests that this Court enter an Order denying Defendant United States of America's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 32] in its entirety and grant any and all other relief that this Court deems just, proper, and equitable.

Dated: July 6, 2021

By: */s/Eduardo A. Maura*
    Eduardo A. Maura, Esq.
    Florida Bar No. 91303
    eduardo@ayalalawpa.com
    Luis F. Quesada, Esq.
    Florida Bar No. 1010305
    lquesada@ayalalawpa.com
    **Ayala Law, P.A.**
    2490 Coral Way, Ste 401
    Miami, FL 33145
    Telephone: (305)-570-2208

    *Counsel for Plaintiff Alejandro Mugaburu*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 6, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy of the same by Notice of Electronic Mail to all counsel of record.

By: */s/Eduardo A. Maura*
    Eduardo A. Maura, Esq.
    Florida Bar No. 91303
    eduardo@ayalalawpa.com