UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-24462-CV-WILLIAMS

ALEJANDRO MUGABURU,

    Plaintiff,

v.

AKIMA GLOBAL SERVICES, LLC, *et al.*,

    Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on the Motion for Summary Judgment (DE 114) ("***Motion***") filed by Defendant Akima Global Services, LLC ("***Defendant***" or "***AGS***") to which Plaintiff Alejandro Mugaburu ("***Plaintiff***" or "***Mr. Mugaburu***") filed a Response (DE 120; DE 119) ("***Response***"), and Defendant filed a Reply (DE 122; DE 121) ("***Reply***"). For the reasons set forth below, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

#### A. FACTUAL BACKGROUND

On July 11, 2019, Plaintiff was taken into custody by U.S. Immigration and Customs Enforcement ("***ICE***") and housed at the Krome North Service Processing Center ("***Krome***") in Miami-Dade County, Florida. (DE 24 at 4.) During processing and intake, Plaintiff "informed the registered nurse that he suffers from several medical conditions, including epilepsy, asthma, and cardiovascular, cholesterol, and hypertension problems" requiring daily medication, "particularly his epilepsy medication—the anticonvulsant

Levetiracetam." (DE 24 at 4.)  Despite Plaintiff's medical conditions, the individuals who handled intake ultimately did not provide Plaintiff with a "disability badge" that would have allowed him access to sleep on a bottom bunk on the first floor of the dormitory. (DE 114-1 at 6; DE 119 at 3.)

Though the individuals who assisted Plaintiff with intake were not employed by Defendant AGS,[1] AGS is one of ICE's private contractors that provides food and transportation services to detainees in custody at Krome.  (DE 114-1 at 2, 4, 7–9.; DE 119 at 5; DE 121 at 2.)[2]  The extent of AGS' contractual responsibilities includes internally escorting detainees to Krome's medical unit for treatment and the administration of pharmaceuticals, as well as escorting detainees to outside appointments or interfacility transfers to or from Krome.  (DE 114-1 at 4, 7–9.)  It is undisputed that the Krome medical staff, separate from AGS, is responsible for evaluating and treating detainees, which includes writing prescription medications.  (DE 114-1 at 2, 4; DE 119 at 1–2.)

---

[1] In the Amended Complaint (DE 24), Plaintiff filed various claims against detention center officers and medical staff employed by ICE and ICE Health Services Corps ("**IHSC**"), a private company that provides medical services to detainees at Krome. (DE 24 at 1–3.)  The Court dismissed Plaintiff's claims against the detention officers and medical staff except for Dr. Ernesto Yglesias ("**Dr. Yglesias**") who primarily handled Mr. Mugaburu's prescriptions at Krome. (DE 92.)  Later, Plaintiff and Dr. Yglesias filed a joint stipulation of dismissal (DE 115), dismissing Plaintiff's claims with prejudice against Dr. Yglesias.

[2] Pursuant to Southern District of Florida Local Rule 56.1, a motion for summary judgment and any opposition shall be accompanied by a separate and contemporaneously filed and served Statement of Material Fact. See S.D. Fla. L.R. 56.1(a).  Defendant AGS filed its Statement of Material Facts as an exhibit and attachment to its motion for summary judgment in violation of Southern District of Florida Local Rule 56.1(b)(1).

During Plaintiff's time at Krome, he contends that AGS and its employees routinely declined to provide accommodations for his medical and disability needs. (DE 24 at 4.) Notably, Mr. Mugaburu alleges AGS and its officers ignored his requests to avoid stairs and to sleep on the first floor of the dormitory despite the purported medical advice he received from clinicians at other detention facilities who warned Mr. Mugaburu about the dangers of having a seizure and falling due to his epilepsy diagnosis. (DE 119 at 3.) Additionally, Plaintiff contends that he was routinely denied necessary medications and that because his various medical conditions and disabilities were not accommodated, on September 14, 2019, he fell "down a flight of fourteen stairs." (DE 24 at 6.)

Because of his fall, Plaintiff was transported to Kendall Hospital in an ambulance and after receiving treatment he was discharged on September 15, 2019. (DE 114-1 at 7.) Once he was discharged, Plaintiff was transported back to Krome in an AGS van.[3] (DE 24 at 6–7; DE 114-1 at 7; DE 119 at 4.) Because Plaintiff was unable to enter the van on his own, Mr. Mugaburu claims that AGS employees "lifted him up and threw him in the van." (DE 114-1 at 7–8; DE 119 at 4.) From September 15, 2019 until Plaintiff was ultimately released from ICE custody on May 7, 2020, Mr. Mugaburu alleges that AGS handled his transportation in a bus or van three additional times. On October 18, 2019, one month after Plaintiff's fall, AGS transported him back to Kendall Hospital for an appointment in the same van used on September 15, 2019. (DE 114-1 at 8.) On March 7, 2020, Plaintiff alleges AGS transported him from Krome to Monroe County Jail

---

[3] The Parties dispute the accessibility of AGS' vehicles used to transport Mr. Mugaburu. According to AGS, the van was wheelchair accessible, although AGS further claims that Mr. Mugaburu was not in a wheelchair but instead on crutches. (DE 114-1 at 7.) Mr. Mugaburu argues that the AGS van was not accessible to him generally. (DE 119 at 4.)

("**Monroe Detention Center**").  On that date, because he was unable to enter and exit the van on his own he alleges that several unidentified officers "picked him up and throw him in the seat." (DE 114-1 at 8; DE 119 at 4.)  Finally, on April 3, 2020, AGS transported Plaintiff on a bus from Monroe Detention Center to Krome when Plaintiff claims at least one AGS officer assisted with lifting him on and off of the bus.  (DE 114-1 at 8; DE 119 at 4.)

In addition to Plaintiff's allegations that AGS failed to care for his disability needs in transporting him between Krome and other facilities, Plaintiff contends that AGS and its officers would deny him his special, medically prescribed diet, withhold food from him, and delay taking him to receive his medication from the pharmacy as punishment for filing grievances.  (DE 119 at 5–6.)

### B.  PROCEDURAL BACKGROUND

The procedural history of this case begins on October 29, 2020, when Plaintiff filed the first Complaint against AGS, the U.S. Department of Homeland Security, and ICE. (DE 1.)  After an extended period of service and briefing on motions to dismiss, Plaintiff filed the operative Amended Complaint (DE 24) on May 24, 2021.  The Amended Complaint (DE 24) alleged ten (10) claims against eleven (11) Defendants, of which five (5) claims were asserted against AGS.[4]  (*Id.*)  AGS then filed a Motion to Dismiss (DE 35) which the Court granted in part and denied in part, dismissing without prejudice all counts

---

[4] Plaintiff originally asserted five (5) claims against AGS: Count I, violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Count II, violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132; Count VIII, common law intentional infliction of emotional distress; Count IX, common law negligence; and Count X, common law negligent supervision. (DE 24 at 12–15; 25–30.)

against AGS except Count IX—common law negligence ("**Count IX**").  (DE 91.)  Now, AGS moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to Count IX.  (DE 114 at 1.)  For the reasons discussed below, Defendant's Motion (DE 114) is granted in part and denied in part.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[O]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986).  Any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  The party seeking summary judgment carries the burden of "informing the district court of the basis for this motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case." *Feinman v. Target Corp.*, 2012 WL 6061745, at *3 (S.D. Fla. Dec. 6, 2012) (citing *Celotex*, 477 U.S. at 325).  Once the movant satisfies their burden, the burden of production shifts

to the non-moving party, which must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsuchita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotations, citations omitted). However, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Evidence that is "merely colorable" or "not significantly probative" is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 249–50. At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

## III.  DISCUSSION

Plaintiff brings a common law claim of negligence against AGS premised on the doctrine of *respondeat superior* and the AGS officers' "failure to give Plaintiff his required medication and/or failing or refusing to provide Plaintiff with reasonable accommodations despite his known disabilities." (DE 24 at 27–28.) To state a claim for negligence under Florida law, a plaintiff must show: (1) "[a] duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks"; (2) "[a] failure on the defendant's part to conform to

the standard required: a breach of the duty [ ]"; (3) "[a] reasonable close causal connection between the conduct and the resulting injury [ ]"; and (4) "[a]ctual loss or damage[.]" *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). Here, only two of these elements are relevant: duty and breach of duty.

In negligence actions, the Florida Supreme Court has noted that "summary judgment procedures should be applied with special caution." *Holl v. Talcott*, 191 So. 2d 40, 46 (Fla. 1966). Because negligence is typically a jury issue, questions regarding reasonable care are issues upon which reasonable people could disagree, and therefore, they are questions which should be resolved by a jury." *See Stroud by Schuette v. Strawn*, 675 So. 2d 646, 647 (Fla. Dist. Ct. App. 1996) (internal citations omitted).

### A. Duty to Insure Mugaburu's Safety

In Florida, correction officers have a duty to use reasonable care to insure the safety of inmates during their incarceration. *Ferguson v. Perry*, 593 So. 2d 273, 277 (Fla. Dist. Ct. App. 1992); Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla. 1989) ("So long as [plaintiff] was placed in some sort of 'custody' or detention, he is owned a common law duty of care."). This duty also applies within the context of ICE contractors and detainees at ICE detention centers. *Rodriguez v. Akal Sec., Inc*, 534 F. App'x 921, 923 (11th Cir. 2013) (finding that detainees are owed a common law duty of care when under the supervision of an INS contractor's employee).

### 1. Duty to Provide Proper Transportation

With regard to the transportation services, there is no doubt that AGS owed Mr. Mugaburu a duty of reasonable care in transporting him both within and outside of Krome. According to its contract, AGS is responsible for providing "food and transportation

services." (DE 119 at 5; DE 121 at 2.) Errors in providing proper transportation accommodations to a detainee who has limitations or restrictions due to his medical condition can be a violation of an official's legal duty to provide reasonable care. *Haspel v. Lawson*, 2022 WL 610653, at *10 (M.D. Fla. Jan. 24, 2022) (finding that allegations implying a general confusion about the process for arranging transportation accommodations between the medical department and prison transportation suggests negligence).

Here, Plaintiff has alleged four instances when AGS purportedly provided transportation services to Mr. Mugaburu either from or to Krome. Of these four occasions, there is only one occurrence where Plaintiff has not provided sufficient evidence that AGS and its officers were involved. AGS correctly points out that Plaintiff does not remember which van he travelled in or the names or descriptions of the officers that lifted him in the van on March 7, 2020, when he was being transported from Krome to Monroe Detention Center. (DE 114-1 at 8.) In his deposition, when asked, "do you recall what sort of vehicle you were in at that time", Mr. Mugaburu replied, "no." (DE 114-5 at 44:7–44:14.) In a follow-up question, he was asked, "do you know who the transportation guards were for that trip," and Mr. Mugaburu responded, "I don't know." (DE 114-5 at 45:7–45:9.) Unlike the other three transports, AGS has shown there is a lack of evidence to support Plaintiff's claim regarding the March 7, 2020 transportation. Further, given that Plaintiff has not provided sufficient evidence on which a jury could reasonably find for Mr. Mugaburu, the

Court finds summary judgment is appropriate as to his negligence claim for the March 7, 2020 transportation.

Other than the March 7, 2020 transport, there are two dates—September 15, 2019, and October 18, 2019—where it is undisputed that AGS and its officers were involved. (DE 114-1 at 7–8.) On these dates, the AGS van used to transport Mr. Mugaburu was equipped with a wheelchair lift. (DE 114-1 at 7–8.) However, Plaintiff was not in a wheelchair but on crutches. (DE 114-1 at 7.) The record is unclear as to—other than the presence of the lift—how the AGS' van "accommodates people with disabilities." (DE 114-1 at 7.) As such and in light of the fact that Plaintiff asserts that he "could not enter the van himself" and was mistreated and manhandled by officers who physically lifted him up into the van, there is a genuine issue of material fact as to whether AGS provided proper transportation on September 15, 2019, and October 18, 2019.

The final transportation date purportedly handled by AGS occurred on April 3, 2020. During this encounter, Mr. Mugaburu was being transported from Monroe Detention Center to Krome with forty-eight (48) detainees on a bus. (DE 114-1 at 8.) Although AGS contends that Plaintiff cannot recall what sort of vehicle he was transported in or who the guards were, Mr. Mugaburu, in his deposition, attests that he was brought back in a bus and that at least one of the AGS officers lifted him and put him on the bus.

(DE 114-1 at 8; DE 114-5 at 49:23–50:24.)  Therefore, a genuine issue of material fact also surrounds the transportation on April 3, 2020.[5]

### 2. Duty to Protect Mugaburu's Physical Safety at Krome

Within AGS' and its officers' general duty to provide reasonable care to insure the safety of detainees, Defendant owed Mr. Mugaburu a duty to protect him "against unreasonable risk of physical harm." *Jessup v. Miami-Dade* Cnty., 697 F. Supp. 2d 1312, 1323 (S.D. Fla. 2010) (quoting *Ferguson*, 593 So. 2d at 277).  Here, the risk of physical harm involves Plaintiff's risk of falling from elevated surfaces due to his epilepsy diagnosis.  (DE 24 at 3; DE 119 at 3.)

At intake, Mr. Mugaburu told the nurse officials and staff that he suffers from several medical conditions, including epilepsy, asthma, and cardiovascular, cholesterol, and hypertension problems.  Though he believed he should have qualified for a disability badge, which would have allowed him to sleep on a bottom bunk on the first floor, Mr. Mugaburu received a badge assigning him to a bottom bunk on the second floor.  (DE 24 at 4.)  While it is undisputed that AGS and its officers do not handle the intake process and were not responsible for Mr. Mugaburu's initial assignment to a bottom bunk on the

---

[5] Plaintiff alleges that he has suffered damages including physical injuries, emotional distress, and humiliation as a result of being "hoisted" into the van "like he was cargo" while other detainees watched. (DE 24 at 10, 22.)  AGS contends that Florida's "impact rule" would bar Mr. Mugaburu from recovering any damages for emotional distress purportedly caused by AGS' alleged negligence. *R.J. V. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995) ("[T]he impact rule requires that 'before a plaintiff can recover damages for emotional distress caused by negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'").  However, because Mr. Mugaburu has established that he was touched when officers lifted him into the van, Florida's impact rule would not bar his recovery for damages for emotional distress. *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 360, 362 (Fla. 2007) ("When an impact or touching has occurred the [impact] rule has no application.").

second floor, AGS officers demonstrated that they could alter a detainee's sleeping arrangements and, in fact, proceeded to do so for Plaintiff on two separate occasions.

Based on Plaintiff's deposition testimony, when he first arrived at Krome, he received a pass from intake to sleep on the bottom bunk on the second floor of the dormitory. (DE 114-6 at 17:5–17:18.) But when Plaintiff arrived at the dormitory, an AGS officer directed Mr. Mugaburu to the top bunk instead of the bottom bunk he was assigned. (DE 114-6 at 17:5–17:18.)   According to Plaintiff, he was required to sleep in a top bunk for four (4) nights until he "pleaded for a bottom bunk bed," and upon his request an AGS officer told Plaintiff he would "do him that favor" and switched Plaintiff to a bottom bunk. (DE 24 at 25; DE 114-5 at 23:16–24:2.)

In addition to the fact that an AGS officer changed Mr. Mugaburu's bunk assignment twice, AGS and its officers were also made aware of Mr. Mugaburu's request to move to the first floor due to his risk of falling. (DE 24 at 5; DE 114-6 19:17–19:20.) In Plaintiff's deposition, he testified that when he arrived at the housing unit, he showed an AGS officer the pass he was given at intake, assigning him to the second floor. (DE 114-6 at 19:17–19:20.) He testified that he requested to be placed on the first floor but the AGS officer "did not pay attention to that." (DE 114-6 at 19:17–19:20.) The Parties dispute AGS' awareness of his needs and whether Mr. Mugaburu was ever advised that he should avoid stairs and be housed on the second floor. However, at least one AGS supervisor was aware that he wanted to avoid stairs because Mr. Mugaburu requested that he be allowed to use the elevator. (DE 114-1 at 6; DE 119 at 3–4, 6; DE 114-5 at

21:20–22:7.)  According to Mr. Mugaburu, that AGS supervisor ultimately denied his request.  (DE 114-5 at 21:20–22:7.)

Courts have considered that an official's failure to modify a detainee's sleeping arrangements may rise to the level of negligence.  *Faulkner v. Monroe Cnty. Sheriff's Dept.*, 523 F. App'x 696, 700 (11th Cir. 2013).  Here, according to Mr. Mugaburu AGS officers had personal knowledge of Plaintiff's risk of seizures and had previously exercised the authority to modify his sleeping arrangement.  Based on the evidence in the record, a genuine issue of material fact exists as to whether it was foreseeable to AGS, through its employees, that Mr. Mugaburu faced danger of injury by being assigned to the second floor of the Krome facility.

### B. Duty to Provide Mugaburu with Access to Health Care

The fact, which neither party disputes, that AGS did not provide direct medical or health services does not absolve AGS of the duty to at least care for detainees until they can be cared for by others.  *See Jessup*, 697 F. Supp. 2d at 1323 (holding that a correction officer's duty to use reasonable care entails protecting inmates against unreasonable risk of physical harm as well as taking reasonable steps to turn an ill or injured inmate over to a physician or to those who will look after the inmate to see that medical assistance is obtained) (citing *Nobles v. Corrections Corp. of Am.*, 327 F. App'x 838, 840 (11th Cir. 2009)).  A reasonable jury could determine that denying or even delaying medical care, such as a detainee's access to his prescription medications needed to treat his diagnosed illness or disease demonstrated negligence.  *Wade v. McDade*, 67 F.4th 1363, 1375 (11th Cir. 2023) (finding that officials' responses and conduct that delayed an inmate from receiving his prescriptions was "regrettable" and "likely more than merely negligent");

*Lancaster v. Monroe Cnty. Ala.*, 116 F.3d 1419, 1426–27 (11th Cir. 1997) (holding that a jury could infer prison official's error in disregarding an inmate's risk of having a seizure because the officials delayed treatment even after knowing the inmate has a history of seizures), *overruled on other grounds by LeFrere v. Quezada*, 588 F.3d 1317 (11th Cir. 2009); *Colardo-Keen v. Rockdale Cty., Ga.*, 775 F. App'x 555, 568 (11th Cir. 2019) (finding that a reasonable jury could infer that an official failed to execute its duty by delaying a medical order); *Ervin v. Busby*, 992 F.2d 147, 151 (8th Cir. 1993) (finding that county officials may have been negligent in delaying inmate's prescription).

Before Mr. Mugaburu's fall on September 14, 2019, two weeks had elapsed without Mr. Mugaburu taking his epilepsy medication. (DE 114-6 at 45:9–46:17.) Mr. Mugaburu argues that he did not receive his medication because his prescriptions were not timely renewed, and he was not provided medical visits after submitting requests through his "tablet." (DE 114-1 at 5.) It is unclear what role AGS played in taking Plaintiff to timely medical appointments to receive his medication. But, because AGS is responsible for transporting detainees throughout the facility, including to medical visits where detainees receive their medications, it appears that AGS played some role in when Mr. Mugaburu received his medications. (DE 114-3 at 2–3; DE 114-5 at 39:4–41:4.) Indeed, Plaintiff asserts that AGS, at times, delayed the time Plaintiff's medications were given to him, causing Plaintiff to miss breakfast or lunch. (DE 119 at 6.) Thus, even resolving any doubts in favor of the nonmoving party, the Court finds that a reasonable jury could infer there was a foreseeable risk of physical harm to Plaintiff by delaying him access to medical care and his medications. *Parkhurst v. Noble*, 238 So. 2d 691, 693 (Fla. Dist. Ct. App. 1970); *Jessup*, 697 F. Supp. 2d at 1324 ("A claim for negligently failing

to provide access to health care 'is decided on the access to and not the quality of care' provided.") (quoting *Nobles v. Corrections Corp. of Am.*, 2008 WL 2945557, at *1 (N.D. Fla. Jul. 23, 2008)).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE 114) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Motion is granted as to Plaintiff's negligence claim related to AGS' transportation on March 7, 2020.

2. The Motion is denied as to Plaintiff's negligence claim related to AGS' transportation on September 15, 2019, October 18, 2019, and April 3, 2020.

3. The Motion is denied as to Plaintiff's negligence claim related to AGS' duty to insure Mr. Mugaburu's physical safety at Krome.

4. The Motion is denied as to Plaintiff's negligence claim related to AGS' duty to provide Mr. Mugaburu access to health care at Krome.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 6th day of October, 2023.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE